[No. 13681.   Department Two. — February 17, 1892.]

## J. CHAUVET, RESPONDENT, v. WILLIAM McPHERSON HILL, APPELLANT.

RIPARIAN RIGHTS — DIVERSION OF WATERCOURSE — PLEADING — USE OF STREAM — SURPLUSAGE. — Where a complaint in an action for the diversion of a watercourse states facts showing that the plaintiff is a lower and the defendant an upper riparian proprietor upon the stream, averments of the plaintiff's use of the water for a mill, winery, domestic purposes, etc., are mere surplusage.

ID. — LENGTH OF STREAM — DIVERSION BY OWNER OF SPRING — SOURCES OF SPRING. — The right of the owner of land to have a well-defined watercourse continue to flow through it does not depend upon the length of the stream above him, nor is his right affected by the fact that the source of the stream is a spring upon the adjoining land of another, who has diverted the stream from its accustomed channel directly from the spring, nor is it material to consider the sources of the spring itself, in an action to restrain such diversion.

ID. — CROSS-COMPLAINT — COUNTER-DIVERSION BY PLAINTIFF — ANSWER — PRESCRIPTIVE RIGHT. — It is doubtful whether a defendant, in an action to restrain the diversion of a watercourse, can obtain relief against a counter-diversion of the same stream by the plaintiff at a point below the defendant's diversion, to the injury of the defendant, yet a plea by the plaintiff, in answer thereto, of a prescriptive right to such diversion will support a finding in favor of the plaintiff.

ID. — PLEA OF PRESCRIPTIVE RIGHT — UNINTERRUPTED USER. — An averment, in the answer to the cross-complaint, of the use of the water of the stream by the plaintiff for the requisite period, by a diversion which was "open, notorious, and *continuous*, and adverse to defendant," is a sufficient averment of a prescriptive right to the use of the water diverted, although the word "*uninterrupted*" is not used in the averment.

ID. — RESTRAINING DIVERSION BEYOND WATER-SHED — DECREE FAVORABLE TO APPELLANT. — Where the decree in an action to restrain the diversion of water permits the diversion of it by the defendant for any useful purpose, so as not to leave an insufficient flow for the plaintiff's domestic use and watering of stock, and restrains the defendant from diverting the water beyond the water-shed of the stream, and requires him to return the unused surplus to the stream above the plaintiff's land, the decree is as favorable to the defendant as he can properly ask for, and cannot be complained of by him upon appeal.

APPEAL from a judgment of the Superior Court of Sonoma County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*Barclay Henley, James W. Oates,* and *W. H. H. Hart,* for Appellant.

*Lippitt & Lippitt,* for Respondent.

McFARLAND, J. — This action was brought to restrain defendant from diverting the water of an alleged watercourse. Judgment was rendered for plaintiff, — at least, a judgment for costs, — and defendant appeals. If the appeal had been taken by plaintiff, some difficult questions might have been presented. Neither party seems to have had correct notions about riparian rights; but we see nothing in the record of which *defendant* can justly complain. There are only two or three matters that need be noticed.

1. We think that the complaint is sufficient. It states facts showing that plaintiff is a lower and defendant an upper riparian proprietor upon a stream that is sufficiently described; and the averments of plaintiff's use of the water for a mill, winery, domestic purposes, etc., are mere surplusage.

2. The main source of the water of the stream was a certain large spring on defendant's land; and many authorities are cited in the briefs about "subterranean streams," "percolation," "water filtration in the soil," the "sources of springs," etc. But the court found, upon ample evidence, that from the spring in question "a stream of water from time immemorial has flowed in a perceptible current, carrying a large body of water, and at a short distance below the spring the stream flows in a deep, well-defined channel into Asbury Cañon." And this being so, it is useless to consider the sources of the spring itself. The right of the owner of land to have a well-defined watercourse continue to flow through it does not depend upon the length of the stream above him; his right is the same, whether the stream commences on his neighbor's land or fifty miles away.

Defendant filed a cross-complaint, in which he averred, in substance, that he owned land extending from said Asbury cañon or arroyo to another stream, called Sonoma Creek, into which said Asbury Arroyo empties; that at a point on said arroyo below the point at which defendant diverted water as charged by plaintiff, the plaintiff himself had diverted the water of said arroyo, and car-

ried it to a place called Glen Ellen; and that by said diversion sufficient water was not left in said arroyo, or in Sonoma Creek, of which the arroyo is the principal tributary, to afford a supply for defendant's live-stock, or for domestic purposes, etc. (Here, as elsewhere in the case, the notion of riparian rights seems to be, chiefly, that they consist of the privilege of drinking, and watering stock.) And defendant prays that plaintiff be enjoined and restrained from diverting the water at said lower point last above stated. It is doubtful if defendant could obtain the relief asked for by means of a cross-complaint in this action; but it is unnecessary to pass upon that point, because the plaintiff, in his answer to the cross-complaint, sets up a right by prescription to the diversion complained of, and the court, upon sufficient evidence, found that plaintiff had such prescriptive right. We think that the averment, in the answer, of a prescriptive right is not defective, as contended by appellant, although the word "uninterrupted" is not used. The words "open, notorious, and *continuous,* and adverse to defendant" are sufficient. We think, also, that the findings of the court are sufficient, although they might have been fuller.

As before stated, it is difficult to see why defendant complains of the judgment. It appears that he first diverted the water, and has ever since continued to divert it, directly from the spring by means of a box and a three-inch pipe, and uses it for domestic purposes and for irrigating twenty or thirty acres of land. Afterwards, and within three years before the commencement of this action, at a point below the spring, he diverted all the water of the stream and carried it to another part of his land, and used it in connection with his business of manufacturing wine and packing fruit for market; and after this second diversion, as the court finds, neither plaintiff nor his tenants "had any water for domestic purposes, nor did any flow down Asbury Cañon for the use of the stock of plaintiff or defendant." Now, in the judgment, it is decreed that defendant may continue to

take all the water which he has heretofore taken directly from the spring by means of said box and pipe, and use it for any purpose. It is also decreed that he may take all the water of the stream and use it on any part of his land, when it is all necessary, "for domestic purposes and watering his stock." And it further decreed that defendant may use for manufacturing purposes, on any part of his land, as much water as "is consumed" for such purposes, provided that he must not use it when "such diversion and use leave an insufficient flow for plaintiff's domestic use and watering of stock," and provided further, that "he is not entitled to use it when it cannot be returned to the stream above the land of plaintiff," and that when there is any surplus, he must "return the surplus to the stream above plaintiff's land." We do not see what other rights in the premises defendant could well ask for; and if plaintiff is content with the scant remnant of the stream left him by the judgment, defendant should certainly be satisfied. All that plaintiff seems to have gained by the decree is the restraining of defendant from diverting the water to a place from which it cannot possibly flow back into the cañon; and no one, by virtue of riparian ownership, can rightfully divert water beyond the water-shed of the stream from which he takes it. By the findings, defendant had no right other than that of a riparian owner to divert the water, except that which he takes directly from the spring as aforesaid, and that is given him by the decree.

Judgment and order denying a new trial affirmed.

DE HAVEN, J., and SHARPSTEIN, J., concurred.