[L. A. No. 362. Department One.—September 18, 1899.]

WILLIAM BATHGATE et al., Appellants and Respondents, v. JAMES IRVINE, Respondent and Appellant.

RIPARIAN RIGHTS—APPROPRIATION BY LOWER PROPRIETOR—PRESCRIPTION—ADVERSE USER—PERMISSIVE USE.—A lower riparian proprietor cannot acquire a right, either by prior appropriation or by prescription or adverse user, as against an upper riparian proprietor whose rights antedate the appropriation and user, where the waters of the stream have been diverted only at a point on the land of the lower proprietor; and the mere nonuser of the water by the upper proprietor, and his permitting the water to pass down through his land to the lower owner, cannot make the user of the latter adverse, or strengthen his claim of appropriation or prescription.

ID.—RIGHT OF ACTION ESSENTIAL TO ADVERSE USER.—There can be no adverse appropriation or user by a lower appropriator of water which invades no right of an upper riparian proprietor, and which he has no right of action to prevent.

ID.—NONRIPARIAN LANDS—LARGE TRACT OF RIPARIAN OWNER—DIVERSION OF STREAM BEYOND WATERSHED.—Lands situated beyond the natural watershed of a stream, and which are not drained thereby, are not to be regarded as riparian to the stream, though forming part of a large tract held by a riparian owner in one body; and such owner cannot, to the injury of another riparian owner, under the claim alone of riparian rights, take the water of the stream beyond its natural watershed, for any purpose.

ID.—INAPPLICABLE RULES OF COMMON LAW.—The rules of the common law as to riparian rights, in their extreme rigor, have not been found to be adapted to the conditions existing in this state; and any rule of the common law relating thereto, which is inapplicable to our conditions, should not be adopted here.

ID.—RETURN OF WATER DIVERTED BY LOWER PROPRIETOR.—A lower riparian proprietor who diverts the waters of the stream for any purpose above the lands of an upper riparian proprietor must return the waters at the upper boundary line of the latter, or above his lands.

ID.—ACTION TO QUIET TITLE—FAILURE TO DETERMINE EXTENT OF RIGHTS—INSUFFICIENT EVIDENCE—PERMISSION IN JUDGMENT.— In an action by lower riparian proprietors to quiet their title to the waters of a creek, and for an injunction against diversion by an upper proprietor, to their injury, where the court found as to the general rights of the parties as riparian owners, but, for want of evidence to enable it to do so, was unable to determine the exact or approximate part or portion of the waters to which the parties were each entitled, the court may render judgment, with leave therein to any party to the action at any time to bring another action to determine the proportion of the waters to which each is entitled.

ID.—EVIDENCE—PRESCRIPTION AGAINST LOWER PROPRIETORS—HARMLESS RULING.—The exclusion of evidence to show that the plaintiffs in such action had acquired by prescription all the riparian rights of all the riparian owners below them, who were not parties to the action, is not prejudicial error, where the evidence as a whole was not sufficient to enable the court to apportion the rights of the parties to the action.

ID.—IMMATERIAL EVIDENCE—NOTICE OF CLAIM OF WATER DIVERTED BY DITCH.—The posting of a written notice by plaintiffs' predecessors at the point of diversion of the waters of the creek by a ditch, making a formal claim to the exclusive use of the waters of the creek flowing at the head of the ditch, can add nothing to their rights to divert the water as against the defendant, an upper riparian proprietor; and evidence thereof is properly excluded as immaterial.

ID.—KNOWLEDGE OF UPPER RIPARIAN PROPRIETOR IMMATERIAL.—A notice to the defendant, an upper riparian proprietor, by plaintiffs' predecessors, forbidding him from diverting the water, can add nothing to their right to divert it, as against him; nor would his knowledge that plaintiffs and their predecessors were using the water, and claimed the right to use it, be evidence of adverse user, by the plaintiffs and their predecessors, or of the acquiescence or estoppel of the defendant, in the absence of proof that anything was said or done by the defendant to mislead the plaintiffs.

ID.—DECLARATIONS OF DEFENDANT—OFFER OF PROOF—SPECIFICATION OF MATERIAL ISSUE.—An offer to prove declarations of the defendant

which does not specifically show their contents or materiality, or that they were intended to prove any specified material issue, is properly rejected.

ID.—TRIAL—ASSUMPTION OF ISSUES—OWNERSHIP OF LAND BY DEFEND- ANT—RIPARIAN RIGHTS—INCONSISTENCIES IN ANSWER.—Where the case was tried upon the assumption that defendant was an upper riparian proprietor when the suit was brought, and both parties submitted evidence on that assumption, the court was justified in treating the ownership of the land and the water rights of the respective parties as issues in the case, notwith- standing apparent inconsistencies and denials on the question as to whether the defendant had parted with the title to the property described in the complaint, prior to the commencement of the action.

ID.—COSTS—FEES OF EXPERT WITNESSES.—In the taxation of costs, ex- pert witnesses should be allowed only the usual fees for daily at- tendance and mileage as witnesses, and the costs allowed can- not properly include their pay as experts, nor the expenses in- curred by them in making surveys or preparing maps, when not acting under the direction of the court.

ID.—DIVISION OF COSTS—RETAXATION—ERRONEOUS FINDING.—Where the court, in the exercise of its discretion, divided the costs so as to award to each party the costs incurred in the trial of issues found in favor of each, if it appears that one of the issues was erroneously found in favor of the defendant, the cost of the trial of that issue should be retaxed in favor of the plaintiffs.

APPEALS from a judgment of the Superior Court of Orange County, from an order denying a motion for new trial, and from parts of an order taxing costs.   J. W. Towner, Judge.

The facts are stated in the opinion.

Stephen M. White, White & Monroe, Victor Montgomery, and William T. Kendrick, for William Bathgate et al., Appel- lants and Respondents.

Edwin H. Lamme, James G. Scarborough, Garber, Boalt & Bishop, and Guy C. Earl, for James Irvine, Respondent and Appellant.

CHIPMAN, C.—Action to quiet the title of plaintiffs, two hundred and seventy-five in number, to the waters of Santiago creek in Orange county, and for an injunction.

Plaintiffs appeal from the judgment, from the order denying motion for new trial, and from certain parts of the order dis-

allowing plaintiffs' cost. Defendant appeals from certain parts of this latter order.

Santiago creek takes its rise in high mountain elevations on government land; it flows by a natural, well-defined channel through and over defendant's land, comprising about forty-eight thousand acres; thence over and through a tract of land, about one mile in width, owned by persons not made parties to the suit; thence enters and flows .over and through plaintiffs' lands, comprising in all about two thousand acres. The court found that the predecessors in interest of plaintiffs, about the year 1872, diverted and appropriated all the waters of this creek, about one mile below defendant's land, and used the same upon their said lands for irrigation and domestic purposes, and that said waters have been so used on plaintiffs' lands continuously for the past twenty-one years; that plaintiffs have expended large sums of money in cementing ditches and laying pipe lines from said point of diversion; that all the waters of said creek have been used by plaintiffs during the period for purposes of irrigation, domestic uses, and watering stock, "under claim of right, open, notoriously and continuously, and uninterruptedly, . . . . but said waters have not been used adversely to defendant James Irvine, or his predecessors in interest, . . . . and it is not true that the said defendant and his predecessors . . . . knew that the plaintiffs . . . . used said waters . . . . adversely to the said defendant or his predecessors, or that said defendant and his predecessors in interest, or either of them, . . . . acquiesced in said diversion and use by said plaintiffs"; that the waters diverted by plaintiffs "continue to be absolutely essential for the proper irrigation and maintenance of plaintiffs' said crops . . . . and the use . . . . has been . . . . reasonable, and no diversion above said plaintiffs' point of diversion has, during any of the said times, been made by the said Irvine or others except as set forth in plaintiffs' complaint, . . . . but that said diversion and use by plaintiffs have not been exclusive or adverse to said Irvine or his predecessors in interest." The allegation of the complaint as to defendant's diversion of the water is that about June 24, 1893, defendant constructed a dam in said stream on his own land about three miles above plaintiffs' lands and by means of a

ditch and flumes wrongfully and without the consent of plaintiffs, and against their objections, diverted the entire surface stream and carried the water out of the watershed in which said stream is situated and to a point where the waters do not return to the ancient channel of said stream, and that defendant continues to so divert all of the surface flow of said water to plaintiffs' great injury. The court further found that plaintiffs are and have been, during all the times mentioned in the complaint, as riparian owners, entitled to a portion of the waters naturally flowing in said creek, but are not entitled to all the waters, and that defendant and his predecessors are and have been entitled as like riparian owners to a portion of said waters, "but the court is unable to find from the evidence adduced herein what is the exact or approximate part or portion of said waters to which the parties herein are each entitled"; that about two thousand two hundred acres of defendant's lands through which said creek flows, and lying within the watershed of said creek, are irrigable, but none of said lands have been heretofore irrigated; that it is not true that defendant is estopped from asserting any right to any part of said waters, and it is not true that defendant and his predecessors in interest acquiesced in or encouraged plaintiffs to make the improvements alleged in the complaint, or were grossly careless or negligent in omitting to give notice to plaintiffs that they claimed any interest in said waters adverse to plaintiffs; that plaintiffs were not, by the acts of defendant and his predecessors, led to believe that defendant and his predecessors had no interest in the waters of said creek, and plaintiffs had no reason to so believe, but plaintiffs' rights were exercised in the belief that they had the exclusive right to said waters, and that they had no notice of the claim of defendant and his predecessors "except such notice as knowledge of the ownership hereinbefore found of the lands of the said ranchos by defendant and by his predecessors in interest . . . . imparts, and that plaintiffs and their predecessors in interest had such knowledge, but that said belief on their part was not reasonable; that defendant and his predecessors in interest used the water at any and all times whenever necessary for domestic and stock uses, and have claimed the right so to do, and have, during the

years 1879 to 1892, used the lands of defendant mainly for pasturing sheep, there being at times thirty thousand thereof, and used the said water as needed for them."

As conclusions of law the court found: 1. That plaintiffs and defendant are riparian owners of lands through which said creek flows, and each is entitled to divert, take, and use a portion of said waters for the purpose of irrigating their said lands, and for domestic use and watering stock; 2. Plaintiffs are entitled to judgment that defendant is not entitled to divert or use the whole of said waters, except for domestic and stock uses, or to divert or conduct any portion of the waters of said creek outside the watershed of said creek, nor to use any portion of said waters upon any lands, except for domestic and stock uses and purposes, from which said waters will not or cannot return to the ancient channel of said creek at or above the lands of plaintiffs as set forth in plaintiffs' complaint, and to an injunction restraining defendant therefrom. Judgment was ordered accordingly, "with leave to any party herein at any time to bring another action to determine the parts and proportions of said waters to which they are respectively so entitled"; it was further ordered that plaintiffs and defendant each pay one-half of the fees of the reporter, and that plaintiffs recover their costs incurred in maintaining the issues as to defendant's taking the whole of the water at his place of diversion, and his taking the water out of the watershed for irrigating, and none others.

1. Plaintiffs contend that as lower riparian proprietors they acquired the right to all the waters of the creek by prior appropriation, notwithstanding defendant and his predecessors in interest were upper riparian owners long before plaintiffs made their appropriation. We understand the rule to be settled, and is no longer open to discussion in this state, that such right cannot be thus acquired. (*Hargrave v. Cook*, 108 Cal. 72.)

And it is equally well settled that no right to the water can be acquired by prescription where the lower riparian proprietor has taken the water out of the stream at a point on his own land and has used such water only as the upper riparian proprietor permitted it to pass down through his land to the lower owner; such use by the latter is not adverse in the sense re-

quired to give a right by prescription. (*Hargrave v. Cook,
supra.*)   Nor can the nonuser of the water by the upper ripa-
rian owner of land be invoked to strengthen the claim of appro-
priation, or prescription by the lower riparian owner under like
circumstances. (*Hargrave v. Cook, supra.*)

In appropriating the water which flows across his land, the
lower appropriator invades no right of the upper riparian pro-
prietor.   The latter has no right of action to prevent such use,
for he is in nowise injured, and the former should not be per-
mitted to acquire a right in this manner which the latter is
powerless to prevent.   The case is quite different where the
upper owner appropriates the water.   The lower owner is in-
jured at once and the law gives him a remedy, and, if he fails
to avail himself of it, the appropriation may, by lapse of time,
ripen into an absolute right.

The further claim of plaintiffs is in the nature of estoppel.
It is alleged that the predecessors of defendant, with full knowl-
edge that plaintiffs had diverted all the water of the creek and
had appropriated it all for proper uses, and were expending
large sums of money in constructing ditches and lines of pipe,
stood by, without protest or objection, and acquiesced in the
use of the water by plaintiffs and abandoned their rights therein
to plaintiffs; and that by their acts they are now estopped from
asserting any claim to the water.   The court found against
plaintiffs upon this branch of the case, and these findings are
supported by the evidence.

2. The court found as conclusion of law that defendant, as
riparian owner, has the right to take water away from the
watershed of the creek "for stock and domestic purposes" upon
his lands which are riparian to the stream, to a point from
which the water will not and cannot return to the ancient chan-
nel of the creek, but has no right to so take it for purposes of
irrigation.   It was said in *Chauvet v. Hill*, 93 Cal. 407, that
"no one by virtue of riparian ownership can rightfully divert
water beyond the watershed of the stream from which he takes
it."

It is claimed by defendant that *Chauvet v. Hill, supra,* is not
in point, because in that case the water was taken beyond the
watershed for manufacturing purposes, and there would be a

surplus which, of course, should be returned to the stream, whereas, when used for domestic and stock purposes, the reason of the rule would not apply, because there would be no surplus water to return to the stream—it would all be consumed; for like reason defendant claims that he may take the water beyond the watershed for irrigation provided he consumes it all. On the other hand, it is contended that land situated beyond the watershed cannot be said to be riparian, although part of a contiguous tract some of which is riparian; that land which contributes nothing to the stream by drainage or seepage, but carries all its waters elsewhere to other streams, ought not to have the benefits attaching to lands which contribute by drainage and seepage to that stream; that if the riparian owner may take water for any one use because he is such owner, his right to so take water for any other use, no matter what, must be governed by the same rule; and, therefore, if he cannot take it beyond the watershed for manufacturing purposes, neither can he for domestic and stock purposes nor for irrigation. The rule of the common law as to riparian rights in its extreme rigor has not been found to be adapted to the conditions existing in this state. At common law, the riparian owner was limited in the use of the water of a stream to domestic purposes and watering stock and might utilize it for power. We have added to these purposes that of reasonable use for irrigation (*Gould v. Stafford*, 77 Cal. 66, and other cases); but we are not aware that it has ever been held that water could be taken entirely away from the watershed for any of these purposes under the claim of riparian right.

It is in evidence here (and the same situation frequently occurs in this state) that there is irrigable land within defendant's tract to which water may be profitably taken from Santiago creek where there is no outlet whatever to any stream, and which is not within the watershed of this creek; water taken to this land, it is claimed, would be entirely consumed if used for irrigation or for domestic or stock purposes. If it be true, as defendant claims, that where the water is consumed it is immaterial whether it be within or without the watershed, the reason may be said to apply as well where the use is for irrigation as where it is for watering stock or domestic pur-

poses. We think the rule should be that under the claim alone
of riparian right the owner of the land cannot, to the injury
of another riparian owner, take the water beyond the natural
watershed of the stream for any purpose, and that riparian
rights cannot extend beyond the watershed of the stream, and
that lands so situated are not to be regarded as riparian. If
it ever was a rule anywhere, which we doubt, that the riparian
owner, under riparian right alone, could take the water of the
riparian stream to any part of his land contiguous to his riparian
land, to the extent of taking the water entirely away from the
watershed of such stream, provided he there consumed it all,
it is a rule inapplicable to our conditions and should not be
adopted here. The contention of defendant, carried to its logi-
cal conclusion, would make all the lands embraced in a large
tract riparian to any one or more of the creeks flowing through
it, at the pleasure of the owner, regardless of the lateral ex-
tent of the land, and regardless of the natural barriers which
divide the entire body into distinct and separate drainage sys-
tems, each drawing its natural supply of water from distinct
and separate sources. Such an interpretation of the law of
riparian rights can find no support from any necessity exist-
ing in this state, and would, if adopted, lead to grave abuses,
and would result in serious injustice to other riparian owners.

"The word 'riparian' is defined as relating to the bank of a
stream or other water—river, lake, or sea; as, riparian pro-
prietors, rights, states." (Anderson's Law Dictionary.) The
Latin word "*ripa*" means "shore of a river." (Anderson's Law
Dictionary.) Now, can it be said that land whose watershed
does not drain into a stream is riparian to such stream? Does
it relate to the stream, or in any sense form part of its bank?
Can land be riparian to two creeks whose watershed is entirely
different and have no drainage connection whatever?

"The rights of a riparian proprietor, so far as they relate
to any natural stream, exist *jure naturae,* because his land has
by nature the advantage of being washed by the stream." (Lord
Seldon in *Lyon v. Fishmonger's Co.,* L. R. 1 App. Cas. 662.)
But it cannot be said that land lying beyond the watershed of
the stream has any such advantage. We think the court erred
in holding that defendant could take the water of Santiago

creek beyond its watershed for domestic and stock uses, and did not err in holding that he might not do so for irrigation purposes.

3. It is said that the court erred in failing to find that the defendant should not divert the water of the creek to a point where it would not flow back to the channel above his lower boundary line. (Citing *Vernon etc. Co. v. Los Angeles,* 106 Cal. 237.) In that case the upper and lower riparian tracts joined each other, and necessarily the upper owner was required to return the water at or above his lower boundary line. In the case here the court found that defendant must return the waters at the upper boundary line or above the lands of plaintiffs. This was sufficient under the facts disclosed in this case.

4. Error is assigned for failure to find the extent of plaintiffs' rights. The court found as to the rights of the parties as riparian owners, but that it "was unable to determine the exact or approximate part or portion of said waters to which the parties herein are each entitled." It seems to be conceded that upon the pleadings the court might have determined this question, but an examination of the transcript fails to show sufficient evidence to have enabled the court to do so. The court could do no more than pass upon the evidence as submitted to it, and if the evidence was insufficient to justify the court in making the proper decree adjusting all the rights of the parties, it could only do as it did, namely, render judgment "with leave to any party herein at any time to bring another action to determine the proportions of said waters to which each is entitled."

5. There are numerous assignments of error in rulings upon evidence, some of which are disposed of by what has already been said. Evidence was excluded that plaintiffs had acquired by prescription all the riparian rights of all the riparian owners below them. These owners were not parties to the suit. The evidence might have been admissible to show the extent of the plaintiffs' rights had the evidence otherwise been sufficient to enable the court to apportion the respective rights of the parties to the suit; but, as the evidence in other respects was insufficient for that purpose, we cannot see that plaintiffs were injured.

The principal errors complained of relate to evidence touch-ing adverse use, estoppel, and abandonment.  Evidence was of-fered that plaintiffs' predecessors in interest posted a written notice at the point of diversion of the water, about a mile be-low defendant's lower line, making formal claim to the water of the creek.  This notice was excluded upon defendant's ob-jection on the ground of its immateriality and that there is no evidence that it is a correct copy.  This notice bears date August 5, 1878.  The ditch referred to in the notice was in fact taken out and the water was appropriated, and a witness testified that he saw this notice.  He also testified that he saw a notice, bearing date November 18, 1878, posted on the door of a house on defendant's land, occupied by one Keith, a ten-ant of defendant's father, James Irvine.  It was directed to James Irvine, George Irvine (who was manager for James), and Henry Keith.  It stated, among other things, that "the un-dersigned claim and have acquired the right to the exclusive use of the water flowing at the head of our ditch in the Santi-ago creek," and forbade the parties above named from divert-ing the water above said ditch.  This notice was signed by the same persons who signed the formal notice of appropriation first above mentioned.  The evidence tends to show that both Keith and George Irvine had knowledge of this notice, but there is no evidence that the then owner of the land, James Irvine, had knowledge of it, or that his manager, George Irvine, had authority to represent him in matters of this kind.  It also appeared that this witness went up about a week later to the point where he had before found the water diverted on to defendant's land, and he then found that the water was turned back and was not being diverted, and never was again diverted by defendant's predecessors, or at all, until recently.

I think it may be reasonably inferred from the evidence that defendant's predecessor knew that the water was being di-verted to and used upon plaintiffs' land, and the court found that no objection was ever made to such use by any one.  It appeared also from the evidence that George Irvine was in-formed that plaintiffs' predecessors in interest claimed the waters of the creek as they were then using them.  One of the appropriators of the water was asked as a witness what conver-

sation he had with George Irvine with reference to the claim made by plaintiffs to these waters, but the court refused the evidence on the ground that it was immaterial and that it had not been shown that notice to George Irvine would bind his principal. At another point in the trial a witness was called to testify as to what he heard James Irvine, senior, say to his attorney in San Francisco some time about 1878, at which time he consulted his attorney "with reference to his right to use waters of Santiago creek. It was simply a conversation stating facts and speculating as what best to do." Witness was asked the following question by plaintiffs: "Did you hear Mr. Irvine state anything with reference to his intentions in relation to the use or disuse of the waters of Santiago creek?" An objection was sustained to the question as irrelevant and immaterial, and on the further ground that Mr. Irvine was dead (he died in 1886), and it had not been shown that he was fully advised of his exact rights in accordance with the requirements of the Code of Civil Procedure, section 1853. It was stated by counsel that the purpose was to show that Irvine received certain advice from his counsel "with reference to the use of the waters of Santiago creek and in respect to his rights in said waters, and that he made certain declarations after having so consulted with his counsel," and that he spoke of the objections which had been made to the diversion by Keith, referred to in the notice of November 18th. Counsel objected on the same grounds and the added ground that the conversation was privileged, as between attorney and client. As to these matters it is not necessary to speak at length. Posting a notice at the point of diversion by plaintiffs could not strengthen their claim. If it had come to the notice of James Irvine at the time, it was of no more force than notice that plaintiffs had actually appropriated the water. He could no more prevent the one than the other, and neither step conferred any rights against Irvine as the upper riparian owner. And the notice posted on the Keith cabin forbidding Irvine from diverting water would not add to plaintiffs' right to divert it. It might have the effect and seemingly succeeded in preventing Irvine from acquiring a right by appropriation, but it could not add anything to any claim of plaintiffs. Nor would

knowledge by Irvine that plaintiffs were using the water, and claimed the right to use it, be evidence of acquiescence or establish adverse use or constitute matter of estoppel. There is no evidence in the record and none was offered to show that James Irvine, senior, or his successors in interest ever did or said anything which misled plaintiffs in making their diversion, or that they ever expended any money on any representation by Irvine that he would not claim any rights as against them, or had abandoned his rights to them, or had acquiesced in their taking the water to the exclusion of his rights. It may be that Irvine made some declarations to his counsel in the presence of the witness, as already referred to, from which some such inference might be drawn, but we think those declarations, whatever they were, were rightly excluded, if for no other reason than that the court was not informed that they were intended to prove any such state of facts. Before we can say there was error in the ruling some inquiry should be pointed out. Counsel should have been more specific in explaining to the court what he desired to prove. We can see no error in the rulings or in the findings as to adverse use by plaintiffs, nor can we see any elements of estoppel in the conduct of defendant or his predecessors.

6. Appellant contends that defendant disclaimed in his answer all riparian rights to the waters of the creek, denied all the facts upon which riparian rights depend, and alleged that before the court obtained jurisdiction of his person he had parted with all his title to the property described in the complaint as belonging to him. For these reasons it is urged that the court erred in finding and adjudging that defendant had any riparian rights or is owner of the property. These matters are made the subject of elaborate argument on both sides. We do not feel called upon to set out the various allegations in the complaint and its amendments, and in the answer and its amendments. There is room for argument *pro* and *con* of the contention by reason of apparent inconsistencies and denials in the answer. It appears, however, that the cause was tried on the assumption that defendant was the owner of the land at the time the action was brought. Plaintiffs and defendant submitted evidence on that assumption, and the point was not

suggested until upon this appeal. Section 739 of the Code of Civil Procedure provides: "If the defendant in such action [to quiet title] disclaim in his answer any interest or estate in the property, or suffer judgment to be taken against him without answer, the plaintiff cannot recover costs." It is quite clear that no such disclaimer as is contemplated by this section was made, for plaintiffs had "judgment for their costs herein, taxed at the sum of $363.45," and are now contending for a still greater amount. We think the court was justified in treating the ownership of the land and the water rights of the respective parties as issues in the case.

7. Plaintiffs filed a cost-bill for $1,599.75, of which the court allowed $363.45. Both parties take exception to the allowance and have appealed from the order. The cost-bill was constructed on the conclusion of law found as follows: "That the plaintiffs and defendant each pay one-half of the fees of the reporter, and that plaintiffs recover of the defendant their costs incurred in maintaining the issues as to defendant's taking the whole of the water at his place of diversion, and his taking the water out of the watershed for irrigating, and none others."

Among the items in plaintiffs' memorandum of costs are: 50 cts., notary fees; $2.75, sheriff's fees; $38.30, clerk's fees; $130.70, fees to H. C. Kellogg, and $130.70 to S. E. Keefer, and $130.10 to J. P. Leslie, attendance as experts; to J. P. Williams $26.80 as witness, and $433.20 to Kellogg and Keefer as surveyors in obtaining data to enable them to compile the maps offered as exhibits by plaintiffs, and for drafting and making said maps and for persons employed to assist them in the surveys. Defendant moved to strike out all the above items, as well as all the others in the memorandum. The court denied the motion as to the notary's, clerk's, and sheriff's fees and witness fees of Williams, and reduced the expert's fees of Kellogg and Keefer to $26.70 each, and Leslie's to $27.10, and allowed one-half the item of $433.20 to Kellogg and Keefer as surveyors in obtaining data to prepare maps, and granted the motion as to other items. The evidence was that the maps referred to were not made under direction of defendant, but were prepared by direction of plaintiffs alone, and defendant

made no use of them except as exhibits at the trial offered by plaintiffs. It appeared that the experts were not acting under direction of the court. It also appeared that defendant paid one-half of the reporter's fees in the course of the trial, which was in accordance with the order of the court.

The witnesses called by plaintiffs as experts were entitled to fees for daily attendance and for mileage as witnesses. They were not entitled to be paid as experts, nor for the expenses incurred by them in making surveys or preparing maps. It was, therefore, error to allow one-half the item of $433.20, and to allow fees as experts. (*Faulkner v. Hendy,* 79 Cal. 265; *Miller v. Highland etc. Co.,* 91 Cal. 103.) These are the only items of cost-bill called to our attention in defendant's brief, although all the items are included in his motion.

In the outcome of the suit plaintiffs failed in their principal contention, and prevailed upon the question of defendant's right to take water beyond the watershed for irrigation purposes, but failed as to his right to so take it for domestic and stock purposes. Upon these two questions we have held that the trial court was correct as to the first, but erred as to the second. The theory of the trial court in adjusting the cost-bill seems to have been to award costs to plaintiffs only for expenditures in maintaining the two issues in which they prevailed. If there were costs also properly chargeable to defendant arising out of the erroneous ruling of the trial court pointed out in this opinion, they should be given to plaintiffs.

It is impossible for us to say from the evidence what these costs should be. Plaintiffs complain that the court struck out a number of items in their cost-bill aggregating quite a large amount, and they claim that the evidence of witnesses whose fees are disallowed gave testimony directly bearing upon the issues found in plaintiffs' favor. This may be so, and it may also be true that the survey work done and the preparation of the maps used at the trial contributed materially to a proper decision of the case. But section 1025 of the Code of Civil Procedure leaves the determination of the question of costs to the discretion of the trial court, and it has been decided here that the prevailing party in a case like this is not necessarily entitled to costs. (*Abram v. Stuart,* 96 Cal. 235.) This

section, however, would not justify the court in allowing costs-not properly chargeable as such, as in the instance above noted for surveying and making maps at the instance of one of the parties not acting under direction of the court.

The judgment should be modified so as to enjoin defendant from taking water for any purpose whatever beyond the watershed of Santiago creek. As thus amended the judgment should be affirmed, with directions to retax the cost-bill in accordance with the views herein suggested.

For the reasons given in the foregoing opinion the judgment is modified so as to enjoin defendant from taking water for any purpose whatever beyond the watershed of Santiago creek. As thus amended the judgment is affirmed, with directions to retax the cost-bill in accordance with the views herein suggested.

Garoutte, J., Harrison, J., Van Dyke, J.

Hearing in Bank denied.