E. CLEMENTS V. WATKINS LAND AND MORTGAGE COMPANY ET AL.

Decided June 11, 1904.

**1.—Irrigation—Riparian Rights.**

Lands that do not lie in the watershed of a stream and whose surface casts their waters away from rather than into the stream, are not riparian to such stream, nor entitled as such to be irrigated therefrom.

**2.—Same—Right by Appropriation and User for Ten Years.**

Findings of fact considered and held not to show that a right to use the waters of a creek for irrigation purposes had been acquired by appropriation and user for more than ten years.

**3.—Same—Unlawful Diversion of Water.**

Where a lower riparian owner complains of the unlawful diversion of the waters of the stream to nonriparian lands by an owner above him, it is no defense that such lower owner is receiving from the stream all the water necessary to irrigate his riparian lands.

**4.—Same—Limitations.**

An unlawful diversion of water to nonriparian lands by an upper owner under claim of right is adverse to the lower owner, and is such a use as will ripen into title by limitations. This would be true also with reference to the use of unnecessary quantities of water, and to allowing the surplus water to go to waste instead of returning it to the stream.

**5.—Same—Rule as to Riparian Rights.**

The doctrine of reasonable use of water by riparian owners obtains in this State, and under it one of such owners may not lawfully exhaust the supply of a stream for irrigation purposes as against the rights of lower owners to a similar use of the water. Fleming v. Davis, 37 Texas, 173, followed, and other Texas cases reviewed and distinguished.

Appeal from the District Court of Reeves. Tried below before Hon. A. M. Walthall.

*J. E. Starley* and *R. W. Flournoy,* for appellant.

*T. J. Hefner, A. C. Mitchell,* and *Edwards & Edwards,* for appellees.

SPEER, ASSOCIATE JUSTICE.—This is an action by appellant against appellees for damages and for injunction, growing out of a controversy over their respective rights to the use of the water of Toyah Creek. The following are the findings of fact of the trial court, upon which judgment was rendered for the appellees, and from which judgment this appeal is prosecuted:

"(1) I find that Toyah Creek is a natural water course with banks and bed, and has its source in the so-called head spring situate on survey No. 256 in Reeves County, Texas, and that same, with the lands in controversy in this cause, are located in the arid portion of Texas, where irrigation is necessary and beneficial for agricultural purposes.

"(2) I find that said head spring furnishes a continuous flow of twelve heads of water, and that the Saragosa Springs which join the creek below the head spring furnish a continuous flow of two and one-half heads of water, and that a head of water as measured in that locality is as much water as will flow unobstructed through an orifice one foot square per second of time.

"(3)   I find that a spring situated above the head spring of Toyah Creek on survey No. 20, the waters of which are used exclusively by the defendant Griffin, for irrigation purposes, furnishes a continuous flow of one and one-half heads of water.

"(4)   I find that plaintiff is the owner of sections Nos. 98, 117, 128, and that part of section 97 lying south of Toyah Creek, containing about 40 acres, all of block No. 13, H. & G. N. Ry. Co. surveys in Reeves County, Texas, and that parts of section 97 and section 98 border on said creek.

"(5)   I find that section No. 98 and that part of No. 97, owned by plaintiff, consisting of 40 acres, are riparian to Toyah Creek, and that sections Nos. 117 and 128 are not riparian to Toyah Creek. And I further find that plaintiff is now receiving and diverting, and has for a long time prior to the filing of this suit received and diverted, two and one-half heads of water from Toyah Creek, for the purpose of irrigating said part of survey 97 and said section 98.

"(6)   I find that plaintiff's irrigation ditch was constructed in the year 1876, by the Saragosa Irrigation and Manufacturing Company. That said company was duly organized and incorporated in accordance with the laws of the State of Texas, to wit, the Act of March 10, 1875. That said corporation accepted the charter and the provisions of said act and operated thereunder. I find that said corporation furnished water and watered the said part of section 97 and section No. 98 now owned by plaintiff in 1876 from said ditch, and from that time the said lands have been watered through said ditch for agricultural purposes. That all the rights acquired by the Saragosa Irrigation and Manufacturing Company are now owned by plaintiff, Clements. I further find that plaintiff, since the year 1892, has continuously irrigated for agricultural purposes parts of sections Nos. 117 and 128, from said ditch, and at times the water in said ditch for said sections 117 and 128 was supplemented by waste water from the Murphy ditch.

"7.   I find that the plaintiff has, until the year 1902, had sufficient water from said creek, supplemented at times by waste water from the Murphy ditch, to irrigate for agricultural purposes 1400 acres of said lands; that in the year 1902 he was forced to abandon the cultivation of 300 acres of said lands, and in 1903 an additional 400 acres of said land, because of the diminution of his water supply aforesaid; and that before said diminution sufficient water flowed in plaintiff's said ditch to run a mill owned by plaintiff on section 98 from the water power in said ditch; but that since said diminution in his water supply he has not been able to run said mill during the irrigation season in a manner to make it profitable because of the irregularity of said water supply. That the plaintiff had reconstructed said mill at a cost of $700 previous to said failure in his water supply, and that the operation of said mill was valuable to said plaintiff.

"(8) I find that one head of water is sufficient to irrigate 300 acres of plaintiff's lands for agricultural purposes.

"(9) I find that the Watkins Land Company owns 300 acres of section No. 256, all of sections 257, 258, 259, 260, 265, the south 429 acres of survey 38, all of 37, the south one-half of 78, all of 92 and 52, and that they and their grantors have owned and been in possession of same from various periods ranging from 1873 to 1891, and to this time, and that Daniel Murphy in 1875 commenced and in 1877 completed an irrigation ditch or canal by means of which he diverted water from Toyah Creek to some of said lands for irrigation purposes. That in 1879 said canal was extended to the head spring of Toyah Creek, by means of which canals then constructed said Murphy diverted water from said head spring for irrigation purposes aforesaid. That said Watkins Land Company now owns and is in possession of said irrigation canal and all the rights acquired thereunder by said Daniel Murphy.

"(10) I find that in October, 1879, Daniel Murphy conveyed to S. R. Miller 541¾ acres of land, more or less, out of the Antonio Ball survey No. 256, lying on both sides of Toyah Creek, and a one-half interest in the head spring of Toyah Creek, the dividing line running through the center of said spring in an easterly direction; also 36 2-3 acres, more or less, of land out of survey No. 257. That C. W. Griffin now owns said land. That some time in the year 1895 patent issued to C. W. Griffin for 172 acres of land adjoining the Antonio Ball survey No. 256 on the north and east, which he now owns.

"(11) That in the years 1872, 1874, 1876 and 1880, S. R. Miller constructed irrigation ditches or canals by means of which he diverted water from Toyah Creek and from the head spring of Toyah Creek to a portion of the lands now owned by said Griffin for irrigation purposes. That defendant C. W. Griffin is now the owner of said irrigation ditches or canals, and is the owner of all the rights acquired by said S. R. Miller' thereunder.

"(12) That the other defendants herein own a certain number of acres of land out of school survey No. 26, awarded to R. E. Lyle and Lacy Duncan in the year 1885. That said defendants irrigate about 300 acres of said land from Toyah Creek and have done so for more than ten years prior to the institution of this suit.

"(13) That the Watkins Land Company diverts by means of its canal one-half of the waters of the head spring of Toyah Creek into ditches on its part of survey No. 256, and carries the waters thereof through its lands and to lands below them. That the Watkins Land Company irrigates about 1200 acres of its said lands for agricultural purposes, and delivers and sells to other parties water to cultivate about 1400 acres of land from the one-half of said head spring.

"(14) I find that the Watkins Land Company sells and delivers for irrigation purposes water as follows: to A. J. Carpenter for 75 acres of land, situate south of section No. 53, and entirely separated by other

surveys from Toyah Creek; to W. D. Casey for 150 acres of north end of section No. 38, also entirely separated from Toyah Creek by other surveys; to J. F. Meier for 40 acres of land on section No. 51, which borders on said creek; to Augustine Hernandez for 230 acres of land on section No. 93, bordering on said creek; to Louis Schertz for 40 acres of land on section No. 93, bordering on said creek; to George Renz, for 40 acres of land on section No. 56, separated from Toyah Creek by other surveys, which use has commenced within the last two years; to Bessier and Hogan for 30 acres of land on section No. 93, bordering on said creek; to Thomas Jaime, for 20 acres of land on section 56, separated by other surveys from Toyah Creek, which use has commenced within the past two years; to John Moore for 230 acres of land on section No. 77, bordering on said creek; to E. G. Carpenter for 275 acres of land on section No. 78, separated from said creek by other surveys.

"(15) I find that the ditches and canals of the Watkins Land Company do not return their surplus waters to Toyah Creek above the plaintiff's lands.

"(16) I find that the following lands are not in the watershed of Toyah Creek, to wit: an uncertain portion of survey No. 258; one-fourth of survey No. 260; practically all of survey No. 37; about two-fifths of survey No. 38; about one-half of survey No. 625; about one-half survey 92; and practically all of survey No. 52; all of which lands belong to the Watkins Land Company; also the major portion of survey No. 93; a small portion of survey No. 94, practically all of survey No. 56, and three-fourths of survey No. 78, all of which lands last described I find belong to persons not parties to this suit.

"(17) I find that the defendant C. W. Griffin now appropriates one-half of the waters of the said head spring of Toyah Creek, and the one and-half heads of water of the spring above the said head spring of Toyah Creek, situate on survey No. 20, for the irrigation of his said 500 acres of land, and that the other defendants other than the Watkins Land Company now appropriate what waters said Griffin returns to the channel of said Toyah Creek for the irrigation of their 300 acres of land, and that no part of said seven and one-half heads of water passes to the plaintiff or beyond the defendant's lands during the irrigation season. I further find that there is a sink or sinks in the natural channel of Toyah Creek opposite the Joe Seay lands, situate on survey No. 26 and extending down said channel to some point above the point where the waters of the Saragosa Springs, situate on survey No. 38, empty into said Toyah Creek. That an uncertain quantity of the waters in said channels disappear into said sink or sinks, and that an uncertain quantity of same rises in the channel of Toyah Creek above the point where the waters of said Saragosa Springs empty into said stream.

"(18) I find that the Watkins Land Company owns and irrigates parts of the following surveys which are entirely separated from Toyah Creek by other surveys, to wit: surveys Nos. 625, 38, 78 and 52.

"(19)   I find that the Saragosa Irrigation and Manufacturing Company made a declaration under section 5 of the Act of March 19, 1889, describing the canal now owned by plaintiff, E. Clements, specifying an average width of 6 feet and depth of 2 1-2 feet and a carrying capacity of 33 1-3 cubic feet of water per second of time, and designating the stream from which the water is taken as Toyah Creek, and that said declaration was duly filed and recorded in the office of the county clerk of Reeves County, on July 18, 1889.

"(20)   I find that the time of the acquisition of the rights of the Saragosa Irrigation and Manufacturing Company the following lands belonged to the State of Texas, and had been set apart to the school fund:   South one-half of section 50; southwest one-fourth of section 94; southwest one-quarter of section 56; southeast one-quarter of section 94; northwest one-quarter of section 56; section 92; southwest one-quarter of section 26, and that all said lands are above plaintiff's lands.

"(21)   I find that at the time of the acquisition of the rights of the Saragosa Irrigation and Manufacturing Company the tract of 172 acres adjoining the Antonio Ball survey No. 256, and now owned by defendant Griffin, was public domain of the State of Texas, and that same was segregated and sold by the State March 1, 1893, and that said land is above plaintiff's land on Toyah Creek.

"(22)   I find that plaintiff, Clements, purchased at execution sale against T. A. Hurchins, in the year 1896, the lands now owned by the Watkins Land Company, and that he held and controlled the same under said title until the year 1901, and that at the time of said purchase by Clements there were outstanding and unpaid vendor's lien notes for the sum of $45,000, then held by the J. B. Watkins Land Mortgage Company; that Watkins Land Company bought the plaintiff's right and title to said lands and all the appurtenances thereto belonging in the year 1901, aforesaid, and that after J. B. Watkins made and executed to the Watkins Land Company his deed for all said lands and appurtenances thereto belonging.

"(23)   I find that in October, 1879, in order to settle a controversy between themselves as to the ownership of said section No. 256, on which is located the head spring of Toyah Creek. S. R. Miller (Griffin's grantor) and Daniel Murphy (grantor of the Watkins Land Company), divided the said survey and divided the said head spring, each conveying to the other one-half of the said spring.

"(24)   I find that at the time plaintiff, Clements, sold his interest in the lands aforesaid to the Watkins Land Company, he claimed and represented to said company and its agents that said lands were not entitled to more than one-half of the waters of said head spring for irrigation purposes, and that his property hereinbefore mentioned was entitled to a portion of the remaining one-half.

"(25)   I find that in said deed from plaintiff, Clements, to the Watkins Land Company the following stipulations were made, to wit:

'This conveyance is not to be construed as in any manner affecting any water rights of either party hereto, the intention of the said parties being that all the title and interest of the said E. Clements in this land and the appurtenances, derived through the tax conveyance and through the conveyance of T. A. Hutchins or W. E. Wilkin therein to him, passes by this deed to the grantee herein, and this deed shall not be construed, as against the said E. Clements, as a waiver on his part of any right or claim he may have to water rights to or for any other lands.

"(26)  I find that twice the quantity of water necessary for the irrigation of plaintiff's lands are necessary to irrigate the same quantity of lands belonging to the defendant Griffin, and that one head of water would be sufficient to irrigate 300 acres of the other defendant's lands other than the Watkins Land Company, if said water was properly used.

"(27)  I find that if the defendants used only the amount of water necessary for the irrigation of their lands, and that if they returned the surplus to the channel of Toyah Creek by safe and proper means, that plaintiff, Clements, would have sufficient water to irrigate all of his lands, which he has been compelled to abandon since and including the year 1902.

"(28)  I find that the following lands belonging to defendants are riparian to Toyah Creek, to wit: survey Nos. 256, 257, 258, 259, 260, 37, 92, and 172 acres adjoining survey No. 256 belonging to Griffin, and all of section No. 26."

At the threshold of discussion we are to determine what lands are riparian, and, as such entitled to waters for irrigation.  Probably upon this point more than upon any other in the case there is a contrariety of views expressed by the courts and text writers.  All appear to agree, however, that lands which do not in any way border upon the water of the stream are not riparian to it.  The word *ripa*, from which the term used is derived, means, literally, a river bank, and therefore, in the broadest sense, all lands touching the stream are riparian in the sense that they relate to the bank.  But of necessity there must be some limitation.  The extent back from the stream must be determined.

Some have thought that all lands belonging to one owner, irrespective of the time and manner of their acquisition, any part of which touches the stream, are riparian (Jones v. Conn, 39 Ore., 730, 64 Pac. Rep., 855) ; while others adhere to the doctrine that the holdings of an owner, before they can be said to be riparian to a stream, must be not only within the limits of the original survey or grant by the government, but must also be within the watershed of such stream, and actually touch its waters.  With this last view, both upon principles and precedent, we are inclined to agree.  In making grants and surveys in the first place the State is presumed to have had in mind the valuable rights incident to the ownership of lands lying upon a stream, and to have conserved the best interests of the public by a proper limitation upon the extent

of one purchaser's holding; and in the very nature of the right of a riparian proprietor to use the water of a stream, he is limited by the watershed of such stream. His right is to use in such manner as not to interfere with the right of another. It would be manifestly unjust to permit the diversion of the water beyond the "divide" to a point from which it could not be restored to the channel of the stream for the like use of the lower proprietors. It can not in any just sense be said that lands not lying in the watershed of a stream, and whose surface casts their waters away from, rather than into it, are entitled to be considered riparian to such stream, and as such to be irrigated therefrom. Such lands do not relate to or form any part of the bank of such stream, and can not be held to share the advantages of those lands which, according to the configuration of the country, turn their waters into the stream. Bathgate v. Irvine, 126 Cal., 135, 58 Pac. Rep., 442; Baehmer v. Big Rock Creek Irrigation District (Cal.), 48 Pac. Rep., 908; Chauvet v. Hill (Cal.), 28 Pac. Rep., 1066; Salem Flouring Mills v. Lord (Ore.), 69 Pac. Rep., 1033; Lux v. Haggin, 69 Cal., 424, 10 Pac. Rep., 773; Crawford Company v. Hall (Neb.), 60 Law. Rep. Ann., 889; Union Mill and Mining Co. v. Daugberg, 81 Fed. Rep., 73; Farnham on Waters, pars. 463a, 602.

It follows from this that the court erred in his twenty-eighth finding of fact, to the effect that all of surveys Nos. 256, 257, 258, 259, 260, 37, 92, and 172 acres adjoining 256 belonging to Griffin, and all of section 26, are riparian to Toyah Creek, since from the other findings it appears that much of said lands lies beyond the drainage area or watershed of such stream. If these lands are not riparian, they are of course not entitled to receive water for irrigation, as against a lower riparian proprietor.

But it is contended by appellees that this finding is immaterial for two reasons: (1) Because they "had acquired the right to appropriate all the water of the head springs of Toyah Creek as against appellant by appropriation and user for more than ten years before the institution of this suit;" and (2) because appellant under the court's finding is receiving from Toyah Creek all the water necessary to irrigate his riparian lands. Neither of these answers is sufficient. The first we think is not supported by the facts, and the second affords no just grounds for denying to appellant the right to complain of appellee's unlawful use of the waters above him. Whatever may be said of the relative rights of riparian proprietors with respect to the irrigation of their reparian lands, we know of no principle of law that will give to an upper owner the right to carry water from the stream to nonriparian lands, whether his own or belonging to another, to the injury of a lower riparian owner. It does not at all follow that because such lower proprietor receives enough water to irrigate his riparian lands, that he is not injured, in the sense that he is denied a cause of action. If the wants of both with respect to their riparian lands are supplied, what superior right has the upper owner to the residue of the water? Clearly

he has none. In truth, neither of them has any right to divert any part of the waters of the stream after his lawful needs are supplied, and any lower proprietor who is injured may prevent such unwarranted use. The rights of each and every owner along the stream are identical, in the respect that each is entitled to have the stream to flow as it was wont to flow by his lands, impaired only by the lawful uses of the owners above him. Every owner has a right to demand this. It is one of his property rights. Necessarily an unlawful diversion of water to nonriparian lands by an upper owner under claim of right, as here, is adverse to the lower owners, and such a use as will ripen into title by limitations. Haas v. Choussard, 17 Texas, 588; Rhodes v. Whitehead, 27 Texas, 316; Baker v. Brown, 55 Texas, 377; Farnham on Waters, secs. 535-542. It can make no difference that the lower owner has no present need of the water thus diverted. Cape v. Thompson, 21 Texas Civ. App., 681, 53 S. W. Rep., 368; Olney v. Fenner, 2 R. I., 211, 57 Am. Dec., 711. He may in future put under the ditch more land; owners above him may begin, or lawfully increase, their use. Or he may, as in this instance, have a mill which might profitably be operated but for such unlawful uses. Appellant, then, for the protection of his property rights in the accustomed flow of the stream, is entitled to the writ of injunction against appellees, to restrain them in the unlawful use of the waters of Toyah Creek, in diverting them to nonriparian land, unless such use has ripened into a title by prescription. And as before indicated, in view of the court's findings and of the evidence, we can not hold this. It is probable that a prescriptive right to the water may be acquired by the adverse use, even upon riparian lands. In the nature of things, however, it is more difficult under such circumstances to determine when such use is adverse, for if every proprietor has a lawful right to irrigate his riparian lands, which he undoubtedly has, if in doing so he violates no rights of other proprietors, then it follows that such use of the waters by him does not become adverse to the lower proprietors until they are injured thereby. The lower proprietor is not injured so long as the use by the upper proprietor is both lawful and reasonable under the circumstances. Now, a waste of water, even upon riparian lands, would be neither lawful nor reasonable, so that one might acquire by limitations a right to use unnecessary quantities of water, or to allow the surplus to go to waste, rather than to return it to the channel of the stream above the lands of the lower owner, as would be his duty. Here, such use being in violation of the lower owner's right to the unimpaired flow of the stream, it would be adverse to him, precisely the same as if the diversion was to nonriparian lands. Kinney on Irrigation, 452; Gould on Waters, sec. 217; Long on Irrigation, secs. 42, 19; Rhodes v. Whitehead, 27 Texas, 310; Gould v. Stafford, 18 Pac. Rep., 879; Bathgate v. Irvine, 58 Pac. Rep., 442.

We have spoken of the reasonable use of water in connection with irrigation, and we deem it proper here to say that there is a widespread belief that under the decisions in this State the universal doctrine of

reasonable use of water for irrigation does not apply in Texas. It is contended in this case, and is so understood by many courts and writers, that with us, especially in the arid portions of the State, irrigation is an ordinary use, and being such, one proprietor may lawfully exhaust the supply as against the rights of all lower proprietors. · No less an authority than Mr. Farnham, in his recent work on Waters and Water Rights, has declared: "The Texas courts have carried the right to use the water for irrigation purposes further than it has been carried elsewhere, and further than can be supported either by principle or authority." Par. 604. But this belief, we think, is due to a misconception of the effect of the decisions of our Supreme Court upon this subject. That there are expressions in some of the decisions which would lend color to this contention there can be no doubt; but that our Supreme Court not only has not repudiated but rather has adopted the familiar rule of reasonable use, there is also no doubt.

The case of Fleming v. Davis, 37 Texas, 173, which, so far as our search has revealed, is the only case wherein the relative rights of upper and lower riparian owners to the use of water for irrigation was involved, is one of the best considered cases in the reports, and clearly aligns this State with the common law rule. It is there said: "That certain portions of the State of Texas are subject to periodical drouth, and that the growth of vegetation would be greatly improved by the artificial application of water, are well understood facts; but whilst irrigation may be recommended by economy, must it be regarded as a thing of necessity? If so, does the necessity exist throughout the State? If not, must we lay down a rule predicated upon supposed public necessity, which is to apply only to certain portions of the State, for the reason that it could not find its predicate elsewhere? * * * The law has its certain rules, which, although not mathematically, are morally exact. This court meets with many difficulties in arriving at the moral exactitude attainable, but, we apprehend, were we to attempt judicial legislation·on this subject, we should find ourselves much more at fault than we now. are, acting under long and well-settled principles. * * * This doctrine (reasonable use) is founded on the well known maxim, 'Sic utere tuo ut alienum non laedas.' We adopt this maxim as the rule for our decision in this case."

This decision being, as it is, the only one upon the question, has never been overruled, and may today be taken as the established doctrine of this State. The authorities most relied upon to establish a contrary doctrine are Rhodes v. Whitehead, 27 Texas, 304; Tolle v. Carreth, 31 Texas, 362, and Mud Creek Irrigation Co. ·v. Vivian, 74 Texas, 170, 17 S. W. Rep., 1078. The queston was not involved or decided in either of these cases. In the first case there is a dictum that "it may be admitted that the purpose of irrigation is one of natural uses, such as thirst of people and cattle, and household purposes, which must absolutely be supplied; the appropriation of the water for this purpose would

therefore afford no ground of complaint by the lower proprietors, if it were entirely consumed." This digression was criticised in Union Mill Co. v. Ferris, 2 Sawyer (U. S.), 176, and is manifestly not true at best. It can not be contended, much less admitted, that irrigation, however beneficial or even necessary to the profitable production of crops, is a natural use of the water, and entitled to be classed with the well recognized uses for man and beast and domestic purposes. The idea that these natural uses may be interfered with by the exhaustion of the stream above for the artificial use of irrigation is repudiated by the Supreme Court in the later case of Baker v. Brown, already cited in this opinion. The Tolle-Carreth case was a contest between an upper proprietor, who wanted the water for irrigation, and a lower owner who used the stream to operate a mill. The court held that the right of the upper owner to irrigate was prior to that of the lower owner for mill purposes.

In the Mud Creek Irrigation Company case, the opinion, written by our present chief justice, discloses pointedly that the plaintiff corporation sought to enjoin the defendant from maintaining a dam on the creek above, which diverted the waters from plaintiff's irrigation ditch, without any allegation whatever that plaintiff was the owner of land abutting upon the stream, or that it had acquired any right in the water by purchase or condemnation, from any riparian proprietor. The court there say: "In this case the plaintiff, by its incorporation, became invested with the power to acquire, as a corporation, a privilege of using the waters of Mud Creek for the purpose of irrigation, but it did not thereby obtain a right to the use of the waters. That right remained to be acquired, which could have been done by either purchase or condemnation, provided the use was a public one. * * * Whether they (the defendants) had the right to divert the whole of it and leave an insufficient supply for the ordinary use of the lower riparian owners, we need not in this case determine." The injunction was refused.

That decision is in line with the Tolle-Carreth case on the question of the priority of irrigation over other artificial uses, which case it cites with approval. These cases establish, to our minds, a most salutary doctrine, i. e., that in the arid portions of the State, where the need of irrigation is great, and that of other artificial uses relatively unimportant, the rule of reasonable use, under all the circumstances, will permit the exhaustion of the water supply for the former purposes as against the latter. That this is the saner view, under the conditions obtaining with us, than would be the rule of the common law,—itself the growth of a country where there is little or no need of irrigation,—there can be little question. Both uses are inferior to the use of the water for quenching thirst, and as between the two, the question of priority is to be determined from all the surroundings—the locality, needs and customs of the people, etc. Farnham on Waters, par. 600.

The confusion existing in the minds of the profession as to the scope of the "Texas rule" has arisen, we think, from their failure to properly "separate the grain of decided law from the chaff of judicial comment." Nor do we think the decision in the case of Barrett v. Metcalfe, 12 Texas Civ. App., 247, 33 S. W. Rep., 758, is against the views we have expressed. On the contrary, the decision seems rather to confirm us in our conclusions. The only asserted rights by the plaintiff in that case were based upon the statute of 1889-1893, authorizing the diversion of the waters of the streams in the arid portion of the State without providing for compensation to the riparian owners affected; and the courts, from the district to the Supreme, held that the act was unconstitutional, and sustained an exception to the plaintiff's petition upon this ground. If the act was unconstitutional, it was so because the defendants had a property in the flow of the stream. If they had such property it belonged to them, and not to the owner next before them; in other words, the property was in each owner subject to the reasonable use of the other owners, and was not merely a property in the use of such waters as the upper owners might see fit to send down to them. As said of this case by Mr. Farnham, section 604: "After deciding that none but the owner furthest up on the stream had any right which could be destroyed by the owner above him, the court held that the statute permitting the taking of the water from the stream without compensation to the riparian owner was unconstitutional in that it deprived the riparian owner of his property right in the water without compensation. It is difficult to see how that result can be worked out. If the riparian owner has only a right to use such water as an upper owner permitted to flow down to him, it would seem that his right is so precarious that it can not be regarded as a property right, for the taking of which he is entitled to compensation. The court was in fact applying the common law rule while assuming to apply the modified rule of the Texas court."

It follows from what we have said that the judgment of the District Court must be reversed. We adopt the findings of fact above set out, with the modification that only those surveys and parts of surveys shown to be within the watershed of, and bordering upon, Toyah Creek are to be considered as riparian thereto and as such entitled to water for irrigation. We do not think any of the parties has shown any rights by appropriation, prescription or estoppel. Therefore, judgment will be rendered here in favor of appellant, restraining the appellees and each of them from diverting water from Toyah Creek to nonriparian lands, and from otherwise wasting the water of such stream. This decree is without prejudice to the rights of any of the parties in the future to have determined, in another proceeding, any question of the reasonable use of such waters as among the riparian proprietors.

*Reversed and rendered.*

Conner, Chief Justice, did not sit in this case.

Writ of error granted; judgment reversed and cause remanded.