[Civ. No. 2590. Third Appellate District.—June 16, 1923.]

McKISSICK CATTLE COMPANY (a Corporation), Respondent, v. AUGUST ANDERSON et al., Appellants.

[1] Waters and Water Rights — Pleading — Amendment of Complaint—Discretion.—In an action to determine plaintiff's rights in and to the waters of a given stream and to obtain an injunction to prevent defendants from interfering with those rights, it is not an abuse of discretion to permit plaintiff to amend its complaint before the actual trial of the action began so as to "correctly plead riparian rights."

[2] Id.—Right of Irrigation District to Condemn Surplus—Amendment of Answer.—In such action, the trial court does not abuse its discretion in refusing to allow the defendant irrigation district to file an answer under section 534 of the Code of Civil Procedure, setting up the right to condemn and so appropriate to a public use so much of the waters flowing in the stream in question as are not required by plaintiff for its actual and necessary beneficial uses, where the motion to file such answer is made on the day on which the action is called for trial.

[3] Id. — Extent of Plaintiff's Rights — Evidence — Findings. — In this action to determine plaintiff's rights in and to the waters of a given stream and to secure an injunction to prevent defendants from interfering with those rights, the evidence was not sufficient to justify the finding of the trial court that plaintiff had a right by appropriation to the waters of said stream to the extent of two thousand inches measured under a four-inch pressure, but there was ample evidence to support the finding that the lands described in the complaint were riparian to said stream and that plaintiff was, therefore, entitled to the benefit of the normal flow of said stream to its lands described in the complaint.

[4] Id. — Riparian Proprietors — Prescription — Appropriation. — A lower riparian proprietor cannot acquire either by prescription or by appropriation as against the upper riparian owner the waters from a stream to which their respective lands are riparian.

[5] Id.—Acquiescence in Use by Defendants—Estoppel—Evidence. The evidence having shown that plaintiff at all times asserted its right to the waters of the stream in question by removing from time to time any obstructions which were placed in the stream to prevent the waters from flowing to its lands and by opening the

4. Correlative rights of upper and lower riparian proprietors, notes, 9 Ann. Cas. 1235; Ann. Cas. 1913E, 709; Ann. Cas. 1915C, 1026; 41 L. R. A. 737.

gates of the reservoirs maintained by defendants so as to allow the waters therein stored to return to the stream, the trial court properly determined that plaintiff was not estopped from claiming the rights to the waters of the stream because of acquiescence in the use of said waters by defendants.

[6] Id. — Rejection of Evidence of Prior Action — Absence of Error.—On the cross-examination of plaintiff's principal witness, defendants having offered in evidence the complaint in a prior action brought by plaintiff against one of the defendants and also an order or judgment dismissing said action, it was not error for the trial court (on its own initiative, no objection having been raised by counsel for plaintiff) to suggest to counsel for defendants that it would be more regular to postpone the offer to introduce such evidence until they opened their defense, where, thereupon, the witness interrupted to say that all he knew about said action was what had been told him about it, to which statement counsel for defendants replied that they did not want him to state what he "understood," but what he actually knew about the action, and the matter was not thereafter brought up or further pressed by counsel for defendants.

APPEAL from a judgment of the Superior Court of Lassen County. Geo. H. Thompson, Judge Presiding. Affirmed in part; reversed in part.

The facts are stated in the opinion of the court.

Dennett & Zion and Grover C. Julian for Appellants.

N. J. Barry for Respondent.

HART, J.—The plaintiff is a corporation and has for many years been engaged in the business of raising cattle in Lassen County and owns a body of land, consisting of 1,280 acres, upon which it has for many years raised and harvested hay and pastured cattle. The climate and the lands in the immediate neighborhood of those owned by the plaintiff and just referred to are arid and it is, of course, conceded that grasses suitable for making hay cannot be grown upon said lands without irrigation.

It appears from the complaint, the evidence, and the findings that the lands of the plaintiff constitute what is known as a sink and has been formed largely through the emptying and spreading thereon of the waters of a certain mountain stream known as Red Rock Creek. This creek

has its source on the west side of what is known as the "Warner Range of Mountains." It flows in a general southeasterly direction to, over, and across certain lands known as the "Moulton Meadows" and thence to, over, and across the said lands of the plaintiff. Red Rock Creek is one of the characteristic mountain streams which are sometimes known as "flash" creeks, whereby it is meant that the volume of water is variable and regulated according to the character of the winters with respect to the amount of snow falling upon the mountains feeding that and other creeks or the watersheds of the localities through and over which they flow. In other words, the waters flowing into said creek are mainly from melting snow produced, of course, by the rise of the climatic temperature incident to the spring and summer seasons.

It appears from the evidence and the findings that when the waters from Red Rock Creek reach the lands of the plaintiff they spread out and divide into many channels and later converge in a solid body and overflow the said lands. These lands, it may be added, are naturally hard, slick, and unproductive and crack so as to produce large fissures therein. The spreading of the water from Red Rock Creek over the sink causes silt to be deposited therein which fills the fissures and, indeed, which has formed the soil of said sink. It appears from the evidence that many years before the plaintiff became the owner of the sink its predecessors in interest, by means of small dams in the channels and the construction of ditches leading from said creek, caused the waters thereof to extend over a large body of arid land adjacent to the sink and so increased the area of the sink until it consisted of a body of 1,280 acres of land. Said creek, if the winter season has been propitious for that purpose, carries a large volume of water in the spring and summer months, diminishing in volume, however, as the season advances.

At a point on Red Rock Creek, between the Moulton meadows and the McKissick sink, there is maintained and had been for a number of years a reservoir known as reservoir No. 1. It seems that this reservoir was originally constructed by the Union Land and Livestock Company, a corporation, which had been given a permit by the general government to construct and maintain the same for

the purpose of storing water. This company, however, lost its right to the reservoir site and the defendant Anderson thereafter acquired said right from the government of the United States to store water in said reservoir. Below said reservoir is a diversion dam (which is referred to in the evidence as reservoir No. 2), the purpose of which was to divert the water from the channel of Red Rock Creek into a reservoir designated and known as reservoir No. 3. There is evidence to show that the water stored in the last-mentioned reservoir is taken from the watershed of Red Rock Creek and that said water is never returned to the creek or to lands that drain into the creek and after its storage, therefore, said water is entirely lost to the land riparian to or within said watershed, including the lands of the plaintiff, which are described in the complaint and known as the McKissick sink. It appears that the defendant Anderson has for a number of years caused reservoir No. 3 to be stored with water and has thus prevented the waters of Red Rock Creek from proceeding in their natural flow to the said lands of the plaintiff. The plaintiff, through its agents, has for many years prior to the commencement of this action caused the gates of the reservoir to be opened and any dams which were maintained in the creek to divert the waters thereof from flowing in their natural course to be destroyed so as to facilitate the flow of the stream to its lands. This conduct upon the part of the plaintiff was based upon its claim that the waters of said creek and the watershed thereof are riparian to the lands described in the complaint, and that no one has the right to molest in any way the usual or normal flow of the stream before it reaches the lands of the plaintiff.

The plaintiff, in its complaint, pleads a right by appropriation to a flow of the waters from said creek over and upon lands described in the complaint to the extent of 2,000 inches measured under a four-inch pressure and also sets up the right to the waters of said creek as a riparian owner.

The answer specifically denies all the material allegations of the complaint and in addition thereto, among other things, alleges, in effect, that the waters which reach the lands of the plaintiff described in the complaint come not

alone from Red Rock Creek, but also from Buckhorn Creek, Painter Creek, and Cold Spring Creek; that only about one-third of the water flowing upon the lands of the plaintiff comes from Red Rock Creek. A supplemental or amended answer was filed and therein it was alleged, among other things, that there have been stored in reservoir No. 1 for more than five years prior to the commencement of this action waters diverted from said Red Rock Creek and used for the irrigation of lands within the Red Rock Creek Irrigation District and more particularly for the irrigation of the lands of the defendant, August Anderson; that said waters have not reached the lands of the plaintiff; "that during all of said time, the said plaintiff had knowledge that a right adverse to its right had been claimed and had stood by and had seen the said August Anderson develop his lands and cultivate the same, and plant the same to crops, depending for the irrigation thereof upon the waters stored in said reservoir and diverted for the use thereof, and that the said plaintiff is now estopped to question the right of said August Anderson, and of the other residents of said Red Rock Creek Irrigation District, and of the Red Rock Creek Irrigation District, to divert all of the water of said Red Rock Creek, or to store the same and thereafter divert the same so far as they may be necessary for the irrigation of the lands within said Red Rock Irrigation District." The answer, as it was originally framed and filed, referred to no lands upon which any of the defendants claimed the right to use the water of said creek. It transpired, however, that the defendant Anderson, while the trial was in progress, became the assignee and owner by purchase of a contract between one T. F. Dunaway, the owner at the time of the making of said contract, of all or a portion of Moulton meadows, and one Dana C. Dodge, whereby the former sold to the latter 440 acres of said Moulton ranch, of which 200 acres are conceded to be riparian to said Red Rock Creek. Upon his application, said Anderson was permitted so to amend his complaint as to set up the riparian right to said 200 acres.

The court found that the 1,280 acres of land described in the complaint, and comprising what is known as the McKissick sink, were riparian to Red Rock Creek; that the

plaintiff, as a prior appropriator, was entitled to "take and divert from the waters of said creek for the irrigation of its lands all of the waters of said creek up to 2,000 inches measured under a four-inch pressure, from the first day of March of each year until said creek ceases to flow any water, or as long as said creek will flow during the year," and that whatever rights the defendants and each of them claim to said waters are "subordinate, subservient and subsequent to the right of the plaintiff," as such prior appropriator.   The court also found "that the defendant Anderson is the owner of certain lands consisting of 440 acres in section 21, township 35 north, range 16 east, which said lands are the same lands described in an agreement to sell made by one T. F. Dunaway to Dana C. Dodge, and by said Dodge assigned to said Anderson; that of said 440 acres 200 acres in the north half of said section 21 are riparian to said Red Rock Creek, and that said Red Rock Creek flows through and over and upon said 200 acres, and the same are susceptible to and can be irrigated from the said Red Rock Creek, and that such irrigation is necessary for the raising of crops upon said 200 acres; that there never has been any use of the water of said Red Rock Creek by any of the defendants which was continuous, open, uninterrupted, adverse and under claim of right of either of them to the plaintiff, and that none of the defendants have ever acquired any adverse right or right by prescription as against plaintiff to the waters of said stream; . . . ; that the plaintiff never waived its right to the waters of said stream, or acquiesced in any use thereof by the defendants or either of them and that defendants were never misled in the building of any reservoirs or canals or their attempted use of the waters of said stream by any act or conduct or word or deed of the plaintiff, or any of the grantors of the plaintiff."

Other essential facts were found, among which were these: That with the aid of irrigation from Red Rock Creek the lands of plaintiff, described in the complaint, were capable of producing large quantities of hay and grasses; that in every year when Red Rock Creek carried a heavy or large volume of water the plaintiff by the use of said water flooded its said lands and as a result thereof produced large quantities of hay and pasturage; that said

lands are of an "open and porous" character and would not produce any hay whatever or even pasturage to the extent that it could advantageously be utilized without the same being flooded during the irrigating seasons; that "in the early part of the year 1920 plaintiff had standing and growing upon said lands large quantities of hay, and grasses for pasture, and was depending upon the water of said stream for the irrigation of said crops, and that in the early part of the said year 1920 defendants willfully, wrongfully, unlawfully and without the consent of plaintiff entered upon the channel of said stream at a point above the lands of plaintiff . . . and without the consent of plaintiff closed a dam in the channel of said stream and willfully . . . and without the consent of plaintiff obstructed the flow of all the waters of said stream," and that the defendants Anderson and Red Rock Creek Irrigation District threatened to continue so to maintain said dam and obstruct the flow and divert the waters away from the lands of plaintiff, "and beyond and outside the watershed of said stream," etc.

The decree follows the findings in all essential particulars and, besides declaring the respective rights of the parties in and to the waters of Red Rock Creek, awards as against the defendants the injunctive relief prayed for by the plaintiff.

This appeal is prosecuted by the defendants from said judgment upon a record made up according to the alternative method.

[1] The point first made by the appellants is that the court erred by its action in allowing the plaintiff to amend its complaint. The amendment was made before the actual trial of the action began. The original complaint is not in the record and it is, therefore, impossible for us to determine whether the court abused its discretion in permitting the amendment thereof. Counsel for defendants state in their brief, which statement is, of course, *dehors* the record, that the plaintiff, in its original complaint, did not "correctly plead riparian rights," and that the amendment was designed to correct the deficiency of the complaint in that respect. The record shows that, when the discussion as to the proposed amendment was under way before the court, Mr. Barry, attorney for plaintiff, stated: "The

only purpose of offering this amended complaint was to
show they used it [the water from Red Rock Creek] con-
tinuously through the irrigation season''; that the amend-
ment merely resulted in inserting after or immediately
following the words ''each and every year,'' as those
words were used in the original complaint, the words ''dur-
ing the irrigation season.'' Accepting these statements as
a correct representation of the extent of the amendment
of the original complaint, it is clear that it cannot be said
that there was an abuse of discretion in allowing the amend-
ment. But even if it be true that the original complaint
failed to ''correctly plead riparian rights,'' it would in-
volve no abuse of discretion, abstractly speaking, to allow
an amendment of such pleading so that it would plead such
rights ''correctly.'' Such an amendment, under such cir-
cumstances, would not have the effect of changing the cause
of action or stating a new one. The statement that a
certain fact is ''not correctly pleaded,'' implies that an at-
tempt of some character to plead it has been made, and
even if a pleading unavailingly attempts to plead a fact
properly, and is for that reason subject to the objection
of a general demurrer, it would not involve an abuse of
discretion for the court to allow the pleader so to amend
his complaint as to make it state a cause of action, if it
was in any circumstances capable of being so changed
or amended as to state a case for the relief demanded.

[2] The next point made by the defendants is that the
court erred in refusing to allow the defendant, Red Rock
Creek Irrigation District, to file an answer under section
534 of the Code of Civil Procedure, added to said code
by the legislature of 1917 (Stats. 1917, p. 744), whereby
and wherein it set up the right to condemn and so ap-
propriate to a public use so much of the waters flowing in
Red Rock Creek as were not required by the plaintiff for its
actual and necessary beneficial uses. There was no abuse
of discretion in disallowing the proposed answer to be
filed. The motion to file the answer was made on the day
on which the action was called for trial. The filing thereof
would have added to the case new issues of a nature re-
quiring either a postponement of the trial or the plaintiff
to go to trial without preparation for meeting those new

issues. Moreover, it appeared from the colloquy between court and counsel following the proposal to file said answer that a condemnation suit brought by the said defendant and involving precisely the same water rights was, at the time of the application to file the answer, pending in the superior court of Lassen County, and counsel for the defendant admitted before the court that the said defendant corporation would not be harmed by a refusal to allow the answer to be filed. In fact, counsel for the defendants in effect waived any objection to the ruling of the court declining to allow the answer to be filed.

[3] As to the decision, it is contended by the defendants that the evidence does not support either the finding that the plaintiff has a right by appropriation to the waters of Red Rock Creek to the extent of 2,000 inches measured under a four-inch pressure, or the finding that the lands described in the complaint are riparian to said creek.

We have painstakingly read and examined all the evidence presented by the record before us and thus we have satisfied ourselves that, as to the finding of plaintiff's alleged right to the waters of Red Rock Creek by appropriation, the contention of the defendants must be sustained; but that there is ample evidence to support the finding that the lands described in the complaint are riparian to Red Rock Creek, and that the plaintiff is, therefore, entitled to the benefit of the normal flow of said creek to the lands described in the complaint.

It is not pretended that the right claimed by the plaintiff to the waters of Red Rock Creek by appropriation is based upon the statutory provisions as to the appropriation of the waters of the public streams of the state. The contention is that, many years ago, long before the defendants or their predecessors in interest acquired from the government title to any of the lands which they now claim are riparian to said creek, or claimed the right to the use of any of the waters thereof by virtue of appropriation, and before any of the defendants or their predecessors became riparian proprietors in so far as the waters of said creek are concerned, the plaintiff appropriated from said creek and has uninterruptedly used the same during all the years referred to since that time the 2,000 inches of water

which the court found it was entitled to by virtue of the right of appropriation. There is some evidence to the effect that about twenty-five years before the commencement of the present action the predecessor in interest of the plaintiff, by means of dams and small canals, did appropriate for the use of the lands described in the complaint certain quantities of the water flowing in Red Rock Creek. As to the quantity of water so appropriated the evidence is, indeed, very unsatisfactory. There is no pretense that any measurement, scientific or otherwise, was ever made of the water so appropriated. The witnesses, testifying as to the quantity of water so alleged to have been appropriated, merely ventured guesses as to such quantity of water. None of said witnesses pretended to be experienced in such matters and each merely gave his conclusion as to the matter from his power of general observation. But the principal obstacle in the way of the upholding of the finding as to the alleged appropriation is that there is no testimony showing when the defendants or their predecessors in interest acquired title to the lands which they claim are riparian to the waters of said creek. Obviously, if the defendants or their predecessors in interest acquired title to the lands to which they claim the waters of Red Rock Creek are riparian before the plaintiff made the appropriation which it claims here, then such appropriation cannot prevail or be maintained as against the riparian rights of the defendants as upper riparian proprietors. [4] It is so well settled that authorities need not be cited to confirm the statement that a lower riparian proprietor cannot acquire either by prescription or by appropriation as against the upper riparian owner the waters from a stream to which their respective lands are riparian. We will, however, cite these cases as supporting this proposition: *Hargrave* v. *Cook*, 108 Cal. 72 [30 L. R. A. 390, 41 Pac. 18] ; *Bathgate* v. *Irvine*, 126 Cal. 135, 140 [77 Am. St. Rep. 158, 58 Pac. 442] ; *Pyramid Land & Stock Co.* v. *Scott*, 51 Cal. App. 634 [197 Pac. 398].

It is not necessary to present herein a *résumé* of the evidence which supports the finding that the lands of the plaintiff which are described in the complaint are riparian to Red Rock Creek. It is sufficient to say that a large number of witnesses testified that said creek has had for

many years a well-defined channel passing over and through the Moulton meadows and thence to said lands of the plaintiff. Some of these witnesses stated that they had been familiar with the creek for upward of twenty-five years and declared that the channel thereof from the Moulton meadows to the McKissick sink was of sufficient depth and width to carry a sufficient volume of water to flood the said sink in the irrigation season and thus cause it to produce bountiful harvests of hay and large quantities of pasturage. It is true that the testimony shows that the county built a county road across said creek at a point between Moulton meadows and the sink and that thus the flow of the creek to the lands of plaintiff was for a time obstructed. But this was obviated by ditching around that portion of the road crossing the creek and so causing the water to flow on in its natural course to the sink. This obstruction was not, obviously, due to any act of the defendants or any of them. It did not involve the exercise on their part of any right that they might have claimed to stop the normal flow of the creek to the sink for the purpose of diverting it to their own uses. If the plaintiff had any complaint to make against anybody for said obstruction it was against the county and not against the defendants.

[5] The contention that the plaintiff is estopped from claiming the rights to the waters in Red Rock Creek because of its alleged acquiescence in the use of said waters by the defendant Anderson and his predecessors in interest cannot be sustained. The evidence clearly shows, as we have above pointed out, that the plaintiff at all times asserted its right to said waters by removing from time to time any obstructions which were placed in the stream to prevent the waters from flowing to its lands and by opening the gates of the reservoir so as to allow the waters therein stored to return to the creek.

As to the defendants other than the defendant Anderson it appears that they have or claimed no interest at the time of the bringing of this action and at the time of the trial in the waters of Red Rock Creek. The brief of counsel for the defendant so states and further declares: "The Red Rock Creek Irrigation District includes the lands farmed by Anderson and proposes to acquire the

right to use the waters of Red Rock Creek and the other defendants [Eneboe and Pefley] are directors of the district. It is not contended that they have ever diverted, used or exercised control over the water of the creek." In fact, on the close of plaintiff's case counsel for the defendants moved for a nonsuit on the ground that the plaintiff failed to establish "any action entitling them to an injunction or damage against" said defendants. The motion was denied, not upon the ground that said defendants had been shown by the plaintiff ever to have been in any way concerned in preventing the waters of the creek from flowing to the lands of the plaintiff, but upon the ground that, since this is an action to quiet title and said defendants were charged in the complaint with claiming some rights in the waters of the creek and did not in their answer deny that charge, it was upon them to show in their defense, if they could, any claim that they might have to said waters which were superior to that of the plaintiff. It will thus be seen that, according to counsel for the defendants, the real controversy was between the plaintiff and the defendant Anderson, and as to the latter the court, as seen, found and decreed that he was a riparian owner of so much of the waters in the creek as were necessary to irrigate the 200 acres out of the 440 acres of the Moulton meadows which he acquired through the taking over of the agreement of sale of said land from one Dodge.

[6] The defendants complain that the court erred in refusing to permit them to introduce in evidence the complaint filed in an action brought in the superior court of Lassen County by the plaintiff against the defendant Anderson, on the fourteenth day of July, 1915, and also an order or judgment by said court dismissing said action. This record was offered in evidence in connection with the cross-examination of the plaintiff's principal witness, F. R. Enyart, who, for a period of twenty-five years, was familiar with the lands described in the complaint and for eighteen years in active management of said lands and the cattle-raising business of plaintiff on said and adjacent lands. The pertinency of the proposed proof in connection with the cross-examination of Enyart is not apparent from the record; but it is stated in the brief of defendants that "it was material both to test his accuracy and to find the

scope of his information." There was no objection to this
testimony by counsel for the plaintiff, but the court sug-
gested to counsel for the defendants that it would be more
regular to postpone the offer to introduce the complaint
and the order referred to until they opened their defense,
whereupon the witness interrupted to say, in effect, that all
he knew about said action was what had been told him
about it, to which statement counsel for the defendants
replied that they did not want him to state what he
"understood," but what he actually knew about the action.
The matter was not thereafter brought up or further
pressed by counsel for the defendants. It is clear that the
ruling was not erroneous. The complaint in said action
is not in the record here and, therefore, we are afforded
no enlightenment on what its averments were or whether
in any view it would reflect any light on the issues involved
in this action. Indeed, we know of no way in which the
complaint could pertinently be received into this record
except by way of impeachment and so by first showing
that the witness himself was personally responsible for its
allegations of fact, that the pleading contained statements
inconsistent with the material testimony given by him in
the present case and that he denied making such state-
ments or authorizing them to be made.

In accordance with the foregoing views, so much of the
judgment appealed from as awards the plaintiff, as an
appropriator of the waters of Red Rock Creek, "the use
of all the waters of said creek up to 2,000 inches measured
under a four-inch pressure, and measured at a point where
the channel of said stream enters the lands of plaintiff
from the first day of March of each year for so long a
time as said waters will flow to the lands of plaintiff for
the irrigation of the crops growing thereon," etc., is re-
versed; and the remaining portion of said judgment estab-
lishing the respective rights of the plaintiff and the de-
fendant Anderson as riparian proprietors to the waters of
Red Rock Creek and granting the injunctive relief as
prayed for in the complaint, in so far as such relief applies
to the riparian rights of the plaintiff, is affirmed.

Finch, P. J., and Burnett, J., concurred.