[Civ. No. 4173.   Fourth Dist.   Nov. 8, 1951.]

CHESTER SMITH et al., Respondents, v. H. DALE WHEELER et al., Appellants.

Head, Jacobs & Corfman for Appellants.

Forgy, Reinhaus & Forgy and Arthur M. Bradley for Respondents.

GRIFFIN, J.—This is an action for declaratory relief and an injunction. The gravamen of the complaint is that all of the land of the plaintiffs is riparian to Trabuco Creek and the larger portion of defendants' land is not riparian to that creek and is irrigated with water from that creek to the damage of plaintiffs' riparian land. The complaint asked for a declaration as to lands entitled to be irrigated from the Trabuco Creek and for an injunction prohibiting unlawful diversion. Plaintiffs and respondents are the lower riparian owners, and their property lies contiguous to and westerly of the property owned by defendants and appellants. These ranches are planted to orange trees. The waters used to irrigate them are pumped from wells which the respective parties have dug in Trabuco Creek. The only water involved in this case is the subsurface water running along and over the bedrock of Trabuco Creek in its stream channel extending from east to west. This channel is 800 to 1,200 feet wide and extends along the northerly side of the lands owned by the parties to this action. The stream channel extends between the mesa and the high land bounding it on its northerly and southerly sides. The northerly boundary line of appellants' property is near the northerly bluff of the channel. The channel of Trabuco Creek extends from the upper narrows of Trabuco Canyon where it then debouches from said canyon at a point approximately one-half to three-fourths mile easterly from the land of the appellants and extends westerly several miles to the lower narrows in its course towards the ocean. The creek varies in width from about 100 yards to three fourths of a mile. The northerly and southerly borders of the creek are distinctly marked by high bluffs and at various places by outcropping sandstone.

Underlying the channel of Trabuco Creek is a layer of sandstone practically impervious to water and constituting the bedrock. This bedrock sandstone is not level and is beneath the surface of the channel several feet under the gravel and varies in depth toward the center and northerly border of the channel. The bedrock is irregular and contains channels in and along which the subsurface water runs in dry years

when there is not enough water to supply all the wells. The wells constructed in various parts of the channel, at times, develop a substantial supply of water, and at other times there is little or no water.

Several wells were dug by the respondents in Trabuco Creek. Three wells were dug by appellants therein. There is one well of respondents which they claim was affected by the pumping of water from the well of the appellants. The well of respondents, which is claimed to be affected, lies about 500 feet north of the south border of Trabuco Creek, and the well from which appellants obtain their water lies approximately 300 feet north of the south border of Trabuco Creek. Respondents' well is approximately 880 feet west of appellants' well.

Commencing with the month of August, regardless of the year, there is a depletion of water and not enough to irrigate the lands riparian to Trabuco Creek.

At the southerly boundary of appellants' property is what is described as "Tijeras" mesa and canyon. Except at times when there is heavy rainfall or floods, this mesa and canyon have neither surplus nor subsurface water. Along the boundary of appellants' property and at the southeasterly portion thereof, this so-called Tijeras Mesa is practically flat, and along the southerly boundary it is slightly depressed southerly toward Tijeras Canyon.

Near the center of the Wheeler Ranch there is a slight rise or crest which runs in an easterly-westerly direction, and the drop from this crest to Tijeras Canyon is approximately 4 feet. This crest runs through the property of the appellants and separates the drainage between Trabuco Creek and Tijeras Creek, and is described in the findings of fact as the limit of the water shed of Trabuco Creek. There are about 20 acres of the Wheeler Ranch extending from this Crest to Tijeras Canyon, which are planted to orange trees. The whole tract of appellants' land contains about 160 acres.

The court determined that the land of the appellants which sloped toward Trabuco Creek was in the watershed of that creek and that all of the balance of the land of the appellants sloped toward Tijeras Creek or Canyon and drained into it and was riparian to and in the watershed of said Tijeras Creek. The court described this line in its findings and judgment and stated that there was a well defined summit division point between the watersheds and it determined the riparian rights in Trabuco Creek in accordance with this division point or

line. The court found, among other things, that all of the land of the appellants, with the exception of approximately 10 acres, was in the watershed of a stream known as Tijeras Creek; that Tijeras Creek arises easterly of the lands of the appellants and flows in a general southerly and southwesterly direction and joins with Trabuco Creek at a point approximately 8 miles southwesterly of the land of the respondents; and that there was a well-defined watershed of the Tijeras Creek which joins the watershed of Trabuco Creek. In the court's finding it specifically described this line. It then found that the appellants had improved approximately 20 acres of their land which lies in the Tijeras watershed and that they would, unless enjoined, improve much more land in the Tijeras watershed and irrigate from Trabuco Creek. Judgment was rendered in favor of respondents and an injunction was granted restraining appellants from the use of water on their so-called mesa acreage from August 15 to November 15 of each year. Appellants appeal and question the sufficiency of the evidence to support these findings.

The reporter's transcript contains over 1,100 pages of testimony. It is sufficient to say that the evidence clearly shows that the slope of the terrain on the mesa south of the described summit point or line, which included the 20 acres here mentioned, did slope toward the Tijeras Creek and that the terrain north of that line sloped toward the Trabuco Creek. Counsel for appellants does not concede this fact but argues that notwithstanding this evidence, it is shown that appellants' entire property is within the watershed of Trabuco Creek because, according to some of the evidence, there is an underground watershed underlying the entire Wheeler Ranch at or beyond the depression which is called the Tijeras, which underground watershed is of a standstone formation or bedrock, and is in the form of a spoon, and that the surface of said bedrock continues into Trabuco Creek; that through this underground watershed irrigation water taken from Trabuco Creek, if not consumed, would return to Trabuco Creek above the land or wells of respondents, even though some of the irrigation water actually drained into Tijeras. In other words, it is his contention that all water taken by appellants from Trabuco Creek for irrigation purposes, which was not consumed, would return to Trabuco Creek above the lands of respondents, and that the court erred in finding that the mesa lands here in question were not riparian to the Trabuco Creek.

There are two answers to this last contention. First,

there is conflicting evidence on this question and the trial court was the judge of its weight and found against appellants' contention in this respect; second, in *Rancho Santa Margarita* v. *Vail*, 11 Cal.2d 501 [81 P.2d 533], where a similar argument was made, the court said, at page 548-549: "In past ages this mesa land may have been delta land, and may have been riparian to the river, but riparian rights are not determined by past geologic formations but by the *present natural topography*." (Italics ours.)

Certain exceptions are made to this rule, particularly as to so-called "delta" land near the outlet of a stream. The exceptions, however, do not ordinarily apply to mesa land which in past geologic ages may have been delta land. (*Bathgate* v. *Irvine*, 126 Cal. 135, 143 [58 P. 442, 77 Am.St.Rep. 158] ; *Half Moon Bay Land Co.* v. *Cowell*, 173 Cal. 543 [160 P. 975].)

The next argument is that the use of subsurface water from Trabuco Creek by appellants for irrigation purposes did not damage respondents and that accordingly an injunction cannot be obtained against one taking underground percolating water unless such taking is injurious to the complaining party, citing *Rancho Santa Margarita* v. *Vail, supra,* page 558; and *Katz* v. *Walkinshaw,* 141 Cal. 116 [70 P. 663, 74 P. 766, 99 Am.St.Rep. 35, 64 L.R.A. 236]. The court found that during the months in question there was not sufficient water in Trabuco Creek to irrigate more than the lands riparian to that creek, and if appellants are permitted to take water from it for the purpose of conveying it to property outside that watershed it will cause the orange groves on respondents' lands, which are riparian to that creek, to wither and dry up, and will cause respondents great and irreparable damage.

Appellants contend that the only damage claimed by respondents was that in the year 1947 the crop of oranges on the Smith Ranch was puffy and some of them split and that this damage suffered by respondents was by their own act in choosing not to use irrigation water, due to the high cost of pumping. They cite in their briefs only a portion of the evidence on that subject. There is sufficient evidence supporting the court's finding in this respect. In addition, the court found that appellants expect to and will improve much more land in the Tijeras watershed, and unless enjoined will irrigate it from the waters of the Trabuco Creek. Prohibitory injunction will issue when damage is threat-

ened. (*Island Reclamation Dist. No. 776* v. *Floribel Alfalfa Syndicate,* 167 Cal. 467 [140 P. 4].) The burden of proving the existence of a surplus is on the appellants. (*Allen* v. *California Water & Telephone Co.,* 29 Cal.2d 466, 481 [176 P.2d 8]; *Peabody* v. *City of Vallejo,* 2 Cal.2d 351 [40 P.2d 486].)

▉ The next contention is that it cannot be determined, from the evidence, whether the pumping from appellants' wells affected the water supply in respondents' well. It is argued that since the experts testified to the effect that the bed of Trabuco Creek probably has under the layer of gravel little ridges and shallow channels, and that in the winter and early spring while the water table is high the little ridges between the channels would be covered and the water would move forward as a single body of water, but as the level of the water in the stream falls there would be a series of splitting and reuniting of channels of the stream, it was necessary that the court should make a determination as to what course the individual channels in the sandstone took; that under the evidence and findings it cannot be determined whether or not the channels supplying respondents' well were the same channels supplying appellants' well.

The evidence clearly shows that the operation of appellants' well has had a drastic effect on the reduction in supply of water for respondents' well, and that each party depended upon the same supply of water; that when the pump on appellants' well was not operating the water rose as much as two feet in respondents' well, and that when it was pumping in appellants' well, on occasions, respondents were forced to stop pumping from their well because the pump would "break suction" (i.e., pump air part of the time) and as a result of spasmodic irrigation, the oranges would "split" and that last year respondents' fruit was "very bad" because the grove "got so dry" and that respondents judged they lost between one fourth and one third of their fruit crop. The court's finding that if appellants continued to take water out of the Trabuco Creek watershed during the months mentioned respondents would suffer great and irreparable damage, is sufficiently supported.

▉ The final argument of appellants is that the order here entered permanently requires appellants to refrain from pumping waters from the Trabuco Creek onto the Tijeras watershed properties of appellants between August 15th and November 15th of each year hereafter, and that since it might

reasonably develop that there may may be, in the future, surplus waters in that creek, not devoted to a beneficial use by respondents, or other riparian owners, and since arid conditions might increase or decrease and a different limited time for pumping from appellants' wells onto the acreage here involved might be more reasonable, the court should retain its jurisdiction in this case so as to change or modify orders or decrees as occasion may arise, either on its own motion or on motion of any party.

We are in accord with this policy as expressed in *Allen* v. *California Water & Telephone Co.*, *supra*, page 491; *Peabody* v. *City of Vallejo*, *supra*, page 383.

The judgment should be and is therefore amended by adding to its provisions as a final paragraph: ''The court reserves its continuing jurisdiction to change or modify its findings, orders, and judgment, as occasion may require.'' As thus modified and amended the judgment is affirmed. Respondents to recover costs on appeal.

Barnard, P. J., and Mussell, J., concurred.